

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESUS RUBEN MOLINA, | § | No. 08-13-00157-CV |
| Appellant, | § | On Appeal from the |
| v. | § | 112th District Court |
| ELIAS ALVARADO, | § | of Upton County, Texas |
| Appellee. | § | (No. 12-07-U4238-OTH) |
| | § | |

## **O P I N I O N**

Jesus Ruben Molina seeks interlocutory review under TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(5)(West Supp. 2013) of the trial court's denial of his motion for summary judgment. Appellant contends that suit against him is barred as a matter of law because Elias Alvarado's decision to first sue Appellant's employer, the City of McCamey, constituted the irrevocable election of a defendant under the Texas Tort Claims Act, TEX.CIV.PRAC.&REM.CODE ANN. § 101.106 (West 2011), thereby depriving the trial court of subject-matter jurisdiction to try any claims against Appellant that arise from the same nucleus of operative fact. We affirm.

### FACTUAL BACKGROUND

Alvarado alleges that on October 23, 2010, Appellant negligently struck him while driving a City of McCamey vehicle under the influence of alcohol, thereby causing Alvarado injury. He

further alleged that Appellant failed to stop and render aid after the accident. On July 23, 2012, Alvarado filed suit against the City of McCamey, alleging that it was vicariously liable for Appellant's tortious conduct as his employer. On October 10, 2012, Alvarado amended his petition to include Appellant as a defendant. On October 24, 2012, Appellant moved for summary judgment on the grounds that he was not a proper party to the suit under TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(a). Separately, on December 3, 2012, the City of McCamey filed a plea to the jurisdiction and a motion to dismiss Appellant as a party under TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(e), which requires a court to dismiss a government employee as a party to a suit upon motion where both a government entity and the entity's employee are named as co-defendants.[1] Appellant also resisted discovery on the grounds that he was not a proper party to the suit, and he asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution in response to certain questions. On April 2, 2013, the trial court denied Appellant's motion for summary judgment.

## DISCUSSION

In his sole issue on appeal, Molina contends that Alvarado's decision to sue Molina's employing government agency before suing Molina himself constituted an irrevocable election of remedy under TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(a). As such, under the provision's plain language Molina became immune by operation of law from any suit based on conduct arising from the traffic crash, including any *ultra vires* conduct, and the trial court committed error by denying summary judgment. Alvarado responds that Molina's reading of the statute would violate the canon against abrogation of common law remedies. He further argues that construing

---

[1] There is no indication from the clerk's record that the trial court ever ruled on the City's motion to dismiss.

2

the immunity provision in isolation as opposed to interpreting that provision, the overarching immunity framework, and other Texas Tort Claims Act ("TTCA") provisions as one cohesive text would frustrate the central purposes underpinning the TTCA.

Although the appellate courts may not ordinarily entertain interlocutory challenges to denial of a motion for summary judgment, *see William Marsh Rice Univ. v. Coleman*, 291 S.W.3d 43, 45 (Tex.App.--Houston [14th Dist.] 2009, pet. dism'd), here, Appellant argues that the trial court incorrectly denied the motion for summary judgment because by virtue of the Texas Tort Claims Act's election-of-remedies provision, he is a government employee immune from suit. As such, this Court grants interlocutory review of the summary judgment denial pursuant to TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(5)(West Supp. 2013)(providing for interlocutory review of summary judgment motions "based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state").

A trial court may properly dispose of an issue by summary judgment under TEX.R.CIV.P. 166a when a movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Wright v. Ector County Indep. Sch. Dist.*, 863 S.W.2d 864, 866 (Tex.App.--El Paso 1993, no writ). In assessing a motion for summary judgment, "[e]vidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue[,]" and "[e]very reasonable inference must be indulged in favor of the nonmovant," with "any doubts resolved in its favor." *Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 896 (Tex.App.--Austin 2001, pet. denied). Summary judgment dispositions are questions of law reviewed *de novo* on appeal. *Id.* Likewise, we review questions of statutory construction *de novo*. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008).

3

When a movant seeks summary judgment on the basis of an affirmative defense such as immunity, the movant has the burden of establishing every element of that defense. *Eslon Thermoplastics*, 49 S.W.3d at 896. "A defendant is not entitled to judgment as a matter of law on an affirmative defense if the plaintiff supplies evidence as to any material fact issue relevant to the defense upon which reasonable minds could differ." *Id*.; *see also Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex.App.--Austin 1997, pet. denied). Thus, we determine whether Alvarado, the nonmovant, has presented any evidence that would prevent Appellant from "conclusively establish[ing] each element of [his] defense as a matter of law." *Eslon Thermoplastics*, 49 S.W.3d at 896.

### *Immunity under the Texas Tort Claims Act*

Immunity from suit strips the courts of subject-matter jurisdiction to hear the underlying claim. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008). The State of Texas has absolute sovereign immunity against any suit to which it does not consent by statute or voluntary waiver. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The state, in turn, has granted its political subdivisions such as cities, counties, and school districts governmental immunity, which shields them and their agents from liability under the same conditions as the state itself. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). State employees who commit tortious acts within the scope of their employment may remain personally liable for those acts unless shielded by official immunity. *Franka v. Velasquez*, 332 S.W.3d 367, 382-83 (Tex. 2011). Employees who act outside the scope of their authority lose the benefits of official immunity and remain solely and personally liable in their individual capacities. *Id*. at 383

The Texas Tort Claims Act establishes a limited waiver of both sovereign and

4

governmental immunity, allowing plaintiffs bringing suit against the state or its subdivisions to recover capped damages for certain tortious conduct identified by statute, including negligent acts of its agents committed within the scope of their employment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655-56 (Tex. 2008); *see also* TEX.CIV.PRAC.&REM.CODE ANN. § 101.021 (West 2011)(providing for recovery against the state for actions of employee for "use of a motor-driven vehicle or motor-driven equipment" within the scope of his employment). The Texas Legislature supplemented this framework in 2003 by adding in Section 101.106(a), which bars a plaintiff from suing a state employer once the plaintiff has elected to sue the employer state agency first. TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(a).

Appellant contends that Section 101.106(a) and the TTCA's 2003 amendments creating other subparts of the election-of-remedies provision add in a separate layer of immunity contingent not on a state employee's conduct, but rather on a plaintiff's prior selection of a defendant. In other words, for purposes of Section 101.106(a), a state employee is placed completely outside the trial court's jurisdiction once a plaintiff files suit against the government agency if both suits would involve the same subject matter. Alvarado responds that that construing Section 101.106(a) as forever barring both official and *ultra vires* capacity claims against government employees extinguishes a long-held common law right to proceed against an employee acting outside the scope of his authority. We review this question of statutory construction *de novo*. *Combs*, 258 S.W.3d at 631.

### *Statutory Construction of the Election-of-Remedies Provision*

Our primary directive in constructing statutes is to further the Legislature's intent. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). We begin our

5

construction of Section 101.106(a) by looking to the plain language of the statute, recognizing that if it "is unambiguous, we adopt the interpretation supported by [the statute's] plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). However, the TTCA's entire immunity mechanism, including Section 101.106(a), should also be construed as one cohesive, meaningful whole and not merely interpreted piecemeal from cherry-picked provisions. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Likewise, the immunity mechanism "should be harmonized whenever possible" with the TTCA's other statutory provisions. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

While fidelity to legislative intent is vital, adherence to the U.S. and Texas Constitutions is paramount, and thus in construing statutes "we are obligated to avoid constitutional problems if possible." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex. 2004); *see also Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998)("Statutes are given a construction consistent with constitutional requirements, when possible[.]")(internal quotations and citations omitted). When a statute purports to extinguish long-held common law remedies, we must construct statutes presuming that the Legislature did not intend to displace common law remedies so as to avoid constitutional problems under the Texas Constitution's Open Courts Provision, TEX.CONST. art. I, § 13.[2] *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010); *Cash Am. Int'l Inc. v.*

---

[2] Under the Texas Constitution's Open Courts Provision, a statute may be struck down as unconstitutional where a litigant has shown (1) "a cognizable common law cause of action that is being restricted[,]" and (2) "that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute." *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983). However, the appellate courts cannot consider an Open Courts challenge unless it is preserved for review in a reply brief at the summary judgment stage. *See Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002)("The record reflects that Grant did not raise her open-courts challenge in her response to SWEPCO's summary-judgment motion. Accordingly, she did not preserve this argument."); *see also S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996); *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986)("Even constitutional challenges not expressly presented to the trial court by written motion, answer or other response to a

6

*Bennett*, 35 S.W.3d 12, 16 (Tex. 2000); *see also* Ron Beal, *The Art of Statutory Construction: Texas Style*, 64 BAYLOR L.REV. 339, 411-14 (2012). We may only find that a statute supersedes the common law where the express terms create a "clear repugnance between the two causes of action." *Waffle House, Inc.*, 313 S.W.3d at 802 (internal citations and quotation marks omitted); *Cash Am. Int'l, Inc.*, 35 S.W.3d at 16; *Holmans v. Transource Polymers, Inc.*, 914 S.W.2d 189, 192 (Tex.App.--Fort Worth 1995, writ denied). Statutes that are clearly repugnant to the common law will not be strictly construed. *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993); *cf. Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969)("[I]f a statute . . . deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.").

Section 101.106(a) does not stand alone but functions as part of an overall election-of-remedies immunity scheme. *See generally* TEX.CIV.PRAC.&REM.CODE ANN. 101.106 *et seq*. We read Section 101.106(a) in context of the provisions of the scheme relevant to the pleading stage, which are as follows:

§ 101.106. ELECTION OF REMEDIES.

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

.　　　　.　　　　.

motion for summary judgment will not be considered on appeal as grounds for reversal.")(internal citation and quotation marks omitted). As such, we view statutory construction and constitutionality as two separate questions and address only statutory construction.

(e)   If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f)   If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.   On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

We begin our analysis with the plain text.   As a threshold matter, we note that the plain language of Section 101.106(a) does not draw a distinction between official and *ultra vires* employee liability.   Instead, it serves as a permanent grant of immunity to an employee once an employer is sued.   A brief review of the TTCA's legislative history appears to confirm that in this instance, the Legislature intended the immunity provisions to function precisely as Appellant contends.   Following the initial passage of the TTCA, some litigants sought to circumvent the damages cap by proceeding with suits directly against government employees, who could be reached through immunity gaps in the Act's legal architecture.   *Garcia,* 253 S.W.3d at 656, *citing* Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three: Detailed Analysis of the Medical Liability Reforms*, 36 TEX.TECH L.REV. 169, 290–93 (2005).   In response, the Texas Legislature passed the first version of TEX.CIV.PRAC.&REM.CODE ANN. § 101.106, Act of May 17, 1985, 69th Leg., R. S., ch. 959, § 1, 1985 TEX.GEN.LAWS 3242, 3305, which barred litigants from suing government employees once they had already sued the employing government entity for claims concerning the same subject matter.   *Garcia*, 253 S.W.3d at 656.   The Legislature's purpose in granting employees this immunity was "to insulate

8

the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). In 2003, the Legislature amended Section 101.106 to further winnow down claims under the Texas Tort Claims Act by adding in an election-of-remedies provision requiring suit either against the governmental unit employer or the government employee in an individual capacity, but not both. *Garcia*, 253 S.W.3d at 656-57. In passing this provision, the Legislature intended "to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Id.* at 657.

Thus, when read in isolation, Section 101.106(a) appears to extinguish the common law right to pursue *ultra vires* claims against state employees once the state agency is selected as defendant. This creates a problem under the constitutional avoidance canon, since a statute that vitiates a long-held common law right hazards an Open Courts challenge. However, in an Open Courts challenge to the pre-2003 election-of-remedies provision, the Texas Supreme Court upheld the immunity mechanism as a whole, noting that a plaintiff could "still opt to pursue the full common law remedy against the responsible employee, foregoing or postponing any attempt to recover from the government." *Thomas v. Oldham*, 895 S.W.2d 352, 357-58 (Tex. 1995). Bearing this in mind, we retreat back one level of abstraction and interpret Section 101.106(a) in light of the post-2003 immunity mechanism as a whole to determine whether the statute actually infringes on common law *ultra vires* recovery or whether Alvarado had an adequate alternative for recovery at the pleading stage.

Section 101.106(f) appears to provide a plaintiff with the opportunity to bring an *ultra vires* claim against the state employee directly. Indeed, the only textual difference between the statute and the common law is that the Texas Legislature has provided that a plaintiff must elect to collect damages from either one entity under common law or the other entity under a statutory waiver of sovereign immunity. Since the statute provided Alvarado with the opportunity to elect Molina as the sole responsible party, the Texas Supreme Court has directed us to presume that Appellee deliberately and consciously elected to pursue recovery from the governmental entity only.

Alvarado argues that such a presumption is unreasonable and that this reading of the statute results in a harsh outcome that forces election of a defendant before the start of discovery, when the precise relationship between an agency and an employee vis-à-vis the tortious conduct is unclear. In effect, Alvarado argues that he cannot fully affect his right for *ultra vires* recovery because he must venture into the minefield of litigation against a state employee completely uninformed. Although *ultra vires* claims are technically preserved under the statute's framework in Subsection (f), as a practical matter, we do question whether the choice provided to Alvarado would have been illusory from the start.

None of the election-of-remedies pleading provisions explicitly provide the trial court with an opportunity to rule on the scope of employment issue. Subsection (f) impliedly allows suit to continue against an individual state employee unless the state employee moves to dismiss and shows that (1) the defendant is a state government unit employee, (2) he is acting "within the general scope" of employment, and (3) the suit could have been brought against the agency itself. *See Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex.App.--Houston [1st Dist.] 2011, no pet.)(suit may continue unabated until defendant files motion to dismiss alleging action within scope of

10

employment, at which point plaintiff has 30 days to implead the government agency and dismiss the employee).   The Fourteenth Court of Appeals has recognized that the limiting language of the last two conditions precedent for dismissal as articulated in *Anderson* is proof that Subsection (f) is constitutional under the Open Courts Provision.   *See Hintz v. Lally*, 305 S.W.3d 761, 773 (Tex.App.--Houston [14th Dist.] 2009, pet. denied)("The harsh result of which Hintz complains can be avoided by holding the governmental employee who seeks dismissal under section 101.106(f) to the burden of demonstrating that suit 'could have been brought under this chapter against the governmental unit.'").

However, the decision in *Hintz* came before changes in the legal landscape altered the scope of the last two *Anderson* elements.   In *Franka*, the Texas Supreme Court has held that *all* tort claims "could have been brought" against an agency for purposes of the TTCA, 332 S.W.3d at 375,[3] rendering the third prong of the *Anderson* test essentially meaningless for all but a small set of declaratory or injunctive claims or claims that may be brought against the state under separate, explicit waivers of sovereign immunity.   *See, e.g., Castro v. McNabb*, 319 S.W.3d 721, 731-32 (Tex.App.--El Paso 2009, no pet.)(declaratory judgment action was not brought "under the Tort Claims Act" because the Declaratory Judgment Act provided a separate waiver of sovereign immunity under which claim was brought); *see also Franka*, 332 S.W.3d at 393 (Medina, J., dissenting)(noting that under the majority's reading, "the statute nonsensically requires the plaintiff" to dismiss an actionable claim against the employee and "bring a claim [against the government] over which the court lacks subject matter jurisdiction").   The *Hintz* Court explicitly rested its constitutional ruling on the assumption that "the governmental employee who seeks

---

[3] *See also Rodriguez v. Christus Spohn Health System Corp.*, 628 F.3d 731 (5th Cir. 2010)(finding that compensatory claims against hospital based on the violation of certain statutory medical duties "sounded in tort" and were sufficient to trigger the immunity provisions of Section 101.106 as being "under the Texas Tort Claims Act").

dismissal under section 101.106(f)" would be held "to the burden of demonstrating that suit 'could have been brought under this chapter against the governmental unit.'" *Hintz*, 305 S.W.3d at 773. Whether the rationale behind *Hintz* holds in light of *Franka* is an open question.

Furthermore, under prong two of the *Anderson* analysis, scope of employment is defined by statute as "the performance for a governmental unit of the duties of an employee's office or employment[,] . . . includ[ing] being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX.CIV.PRAC.&REM.CODE ANN. § 101.001(5)(West Supp. 2013). Courts interpreting this language have implicitly found that scope of employment immunity under Section 101.106 *et seq.* is broader than the official immunity insulating state employees from liability. In other words, an employee's actions may be *ultra vires* and unprotected by official immunity at common law and yet still fall broadly "within the scope of his employment" as defined by statute, thus triggering immunity for the employee.

For example, in *Lopez v. Serna*, 414 S.W.3d 890, 896 (Tex.App.--San Antonio 2013, no pet.), an inmate brought suit against two correctional officers in their individual capacity for allegedly confiscating property in violation of prison regulations, thereby committing theft. The trial court dismissed the claim under TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(f) because they were acting within their official capacity at the time the property was confiscated. On appeal, inmate Lopez responded that the dismissal constituted error since "the officers acted outside the scope of their employment because they had no authority to commit theft." *Id.* at 894. However, the San Antonio Court of Appeals affirmed the dismissal, holding that "[a]n official acts within the scope of her authority if she is discharging the duties generally assigned to her[,]" *id.*, *citing Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004), and that "an employee's

12

scope of authority extends to job duties to which the official has been assigned, even if the official errs in completing the task" to the point of constituting theft. *Lopez,* 414 S.W.3d at 894.

We note that although the San Antonio Court of Appeals characterized the dismissal as coming under Section 101.106(f), the officers had never actually moved to dismiss the claim under Section 101.106(f), and the court's decision in *Lopez* actually rested on the ground that the action was a frivolous inmate suit under TEX.CIV.PRAC.&REM.CODE ANN. § 14.003(b)(1). *Lopez*, 414 S.W.3d at 895. Nevertheless, the implications are clear in a case such as this one, where it is unknown whether a defendant may have committed a crime while performing a government duty. Under Section 101.106(f), this would then create a situation in which a defendant could implead the government agency, force his own dismissal, and leave a plaintiff to bring claims that are doomed to fail against the agency on the basis of sovereign immunity. *See Franka*, 332 S.W.3d at 393 (Medina, J., dissenting). We question whether such a broad interpretation of "scope of employment" in Section 101.001(5) essentially swallows up the *ultra vires* doctrine in practice.

As such, we cannot construe Subsection (a) as eliminating the common law *ultra vires* action where the alternative provision that supposedly protects that right – Subsection (f) – sits on constitutionally questionable ground. Such a construction would inevitably leave the immunity mechanism as a whole open to an Open Courts challenge. We also do not find a clear repugnance between Subsection (a) and the common law remedy against employees acting *ultra vires*. Instead, when read as part of the overall immunity mechanism, we believe that Subsection (a) is correctly read as barring suit against an employee only where that employee is being sued in his official capacity, i.e. only where the employee was actually acting within the scope of his employment. Indeed, the Legislature's purpose in passing the original immunity provisions was

"to insulate the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen*, 887 S.W.2d at 8. Even assuming a repugnance, we strictly construe a statute in derogation of the common law against abrogation in "cases not clearly within its purview." *Smith*, 858 S.W.2d at 354. We seriously doubt that the Texas Legislature intended to extend immunity to city employees driving vehicles under the influence of alcohol. Whether the employee is actually acting within the scope of employment – in which case the employee is sued in his official capacity and serves merely as a jurisdictional stand-in for the agency – is a question of fact for the trial court to decide. As such, whether Molina was actually driving the City of McCamey vehicle within the scope of his employment or under the influence of alcohol are both questions of material fact that prevent a grant of summary judgment.

Appellant's sole issue is overruled. We affirm the trial court's denial of summary judgment.


April 23, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.